**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **RICARDO LOZANO-GRIEGO,** | § | |
| **Reg. No. 33782-080,** | § | |
| **Movant,** | § | |
| | § | **EP-22-CV-33-KC** |
| **v.** | § | **EP-21-CR-772-KC-1** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER

Ricardo Lozano-Griego (Lozano) moves to vacate his sentence through a <u>pro se</u> motion under 28 U.S.C. § 2255.[1] Mot. to Vacate, ECF No. 33. His motion is opposed by the United States of America (the Government).  Gov't's Resp., ECF No. 41. His motion is denied.

### BACKGROUND AND PROCEDURAL HISTORY

Lozano is a 58-year-old inmate serving a 15-month sentence for illegally reentering the United States after his removal. J. Crim. Case 1, 2, ECF No. 31. He is currently incarcerated at the Federal Correctional Institution in Three Rivers, Texas. <u>See</u> Find an Inmate, https://www.bop.gov/inmateloc/ (search for Reg. No. 33782-080) (last visited Apr. 11, 2022). His anticipated release date is May 3, 2022.  <u>Id</u>.

On April 12, 2021, Lozano attempted to enter the United States from Mexico at the Ysleta Port of Entry in El Paso, Texas. Presentence Investigation ¶ 3, ECF No. 26. He was apprehended by a U.S. Customs and Border Protection (CBP) officer and questioned about his citizenship. <u>Id</u>. He freely admitted to the CBP officer that he was a national of Mexico did not possess any immigration documents allowing him to enter or remain in the United States legally.

---

[1] "ECF No." refers to the Electronic Case Filing ("ECF") number for documents docketed in EP-21-CR-772-KC-1. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

Id. He was placed under arrest and escorted to Passport Control Secondary (PCS) for further investigation. Id.

An immigration record check at PCS revealed Lozano was removed from the United States to Mexico on January 25, 2021, after his felony convictions in cause number EP-18-CR-2924-KC-1 in the Western District of Texas for illegal reentry and misuse of visas, permits and other documents. Id. at ¶ 4. The records check also disclosed Lozano was previously removed from the United States to Mexico on August 28, 2007, August 21, 2002, and May 23, 2000. Id. at ¶ 34.

Lozano was indicted for illegally reentering the United States after his removal in violation of 8 U.S.C. §§ 1326(a) and (b)(1). Indictment, ECF No. 12. At his plea hearing, he claimed he was a Mexican citizen. Plea Tr. 5:14-5:15, ECF No 40. He also acknowledged he understood the immigration consequences of a guilty plea. Id. at 16:22-17:22. He pled guilty and was sentenced to 15 months' imprisonment. J. Crim. Case 1, 2, ECF No. 31.

The presentence investigation report (PSR) noted Lozano claimed that he "was . . . born on November 13, 1963, in Ciudad Juarez, Chihuahua, Mexico, to the union of Emeterio Lozano Chavez, a United States citizen, who resides in Socorro, Texas, and Benita Griego, a Mexican national, who resides in Ciudad Juarez, Chihuahua, Mexico." Presentence Investigation ¶¶ 37, 38, ECF No. 26. The PSR further documented Lozano said that "he was an only child and his parents separated when he was two years old." Id. at ¶ 38. The PSR also recorded that Lozano maintained "he was primarily reared by his mother and stepfather, Pedro Carrillo, a Mexican national, in Ciudad Juarez, Chihuahua, Mexico." Id. The PSR adds Lozano claimed that "[i]n 1981 (age 18), [he] immigrated to Cactus, Texas, where he remained until 1984 (age 21), and subsequently relocated to Midland, Texas. From 1997 to 2000 (ages 34 to 37), [he] resided in Midland, Texas." Id. at ¶ 39.

Lozano had prior convictions for illegal reentry in cause numbers EP-03-CR-951-DB and EP-18-CR-2924-KC in the Western District of Texas. Id. at ¶¶ 29, 30. His supervised release in the latter cause was revoked after his arrest in this case and he was sentenced to a concurrent term of six months' imprisonment. See United States v. Lozano-Griego, EP-18-CR-2924-KC, Order Revoking Supervised Release, ECF No. 52.

In his § 2255 motion, Lozano claims he was "shown by another federal prisoner" that his counsel may have provided ineffective assistance when he failed to raise the defense that he was a legal resident of the United States at the time of his arrest. Mot. to Vacate 4, ECF No. 33. He explains that he was born out of wedlock in Mexico to a Mexican national mother and a U.S. citizen father. Id. at 7. He asserts that his "father took custody of [him] before age 14 and provided financial support and filed legal documents in El Paso, Texas, recognizing paternity." Id. He further declares that he "lived with his American father who registered [him] in schools and filed most likely the incorrect documentation which resulted in him being given only resident status." Id. He maintains that he is a U.S. citizen pursuant to 8 U.S.C. § 1409(a). Id. at 5. He contends that he "would have not pled guilty . . . if he [had] been informed" by his counsel that he had not waived his U.S. citizenship. Id. at 8. He asks the Court to classify him as a U.S. citizen—and order his immediate release from prison. Id. at 12.

Lozano's counsel, Federal Public Defender Jose F. Moncayo, responds to Lozano's motion. Gov't's Resp., Ex. 1 (Decl. of Jose F. Moncayo), ECF No. 41-1. He declares he discussed a defense to the illegal reentry charge—the possibility he was a U.S. citizen—with Lozano but Lozano said he wanted to plead guilty:

> I advised Mr. Lozano-Griego, on at least one occasion, that although he was born outside the U.S., since his father was born in the U.S., he may have a possible claim to being a United States citizen. I explained that he might be able to complete the necessary immigration paperwork to officially establish his status as a U.S. citizen. Additionally, I advised Mr. Lozano-Griego he could use these facts

to present a possible defense at a jury trial or a bench trial to demonstrate that he may be a U.S. citizen. I asked Mr. Lozano-Griego if he would allow me some time to have my investigator . . . conduct some research based on his background information he had provided to me. He agreed. When I returned to visit him a few weeks later, I had explained to him that we were having difficulty finding leads to help us establish his U.S. citizenship. I then asked him for more time to conduct further research into his immigration matters. Mr. Lozano-Griego became frustrated and explained to me that he wanted to enter a plea of guilty to the charge and to end the criminal process as soon as possible. He also expressed that he was not interested in pursuing his right to establish that he was a legal resident of the U.S.

Id.

## APPLICABLE LAW

Section 2255 "'provides the primary means of collateral attack on a federal sentence.'" Pack v. Yusuff, 218 F.3d 448, 451 (5th Cir. 2000) (quoting Cox v. Warden, 911 F.2d 1111, 1113 (5th Cir. 1990)). But "it does not encompass all claimed errors in conviction and sentencing." United States v. Addonizio, 442 U.S. 178, 185 (1979). It identifies only four grounds on which a movant may obtain relief: (1) the "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." United States v. Seyfert, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted). Hence, it does not permit a claim of error that is neither constitutional nor jurisdictional unless the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962). It also requires a movant to bear the burden of establishing a claim of error by a preponderance of the evidence. Wright v. United States, 624 F.2d 557, 558 (5th Cir. 1980) (citing United States v. Kastenbaum, 613 F.2d 86, 89 (5th Cir. 1980)).

## ANALYSIS

Lozano asserts his counsel provided ineffective assistance by failing to raise the defense

that he was in the United States legally at the time of his arrest. Mot. to Vacate 4, ECF No. 33.

He maintains his "American citizen father . . . raised him in the United States prior to his

becoming an adult." Id. He suggests he is, therefore, a U.S. citizen. Id. To support his citizenship

claim, he provides a copy of his birth certificate showing that both his father, Emeterio Lozano

Chavez, and his mother, Benita Griego Santome, claimed they were Mexican nationals at the

time of his birth. Lozano Birth Certificate, ECF No. 41-2. In addition, he offers a second birth

certificate which suggests that his paternal grandmother, Salome Chavez, was born in the United

States. Chavez Certificate of Birth, ECF No. 41-2. He asks the Court to classify him as a U.S.

citizen and order his immediate release from prison. Mot. to Vacate 2, ECF No. 33.

 Lozano's counsel maintains he discussed with Lozano a possible defense of his acquired

citizenship to the illegal reentry charge. Gov't Resp., Ex. 1 (Decl. of Jose F. Moncayo), ECF

No. 41-1. He adds Lozano told him he "wanted to enter a plea of guilty to the charge and to end

the criminal process as soon as possible" and "was not interested in pursuing his right to

establish that he was a legal resident of the U.S." Id.

 The Court does not have "the power to make someone a citizen of the United States."

I.N.S. v. Pangilinan, 486 U.S. 875, 883 (1988). Moreover, Lozano's request for the Court to

"classify" him as a U.S. citizen exceeds the scope of jurisdiction under 28 U.S.C. § 2255. For

these reasons, the Court will abstain from classifying Lozano as a U.S. citizen.

 A movant's ineffective-assistance-of-counsel claim is analyzed under the two-pronged

test in Strickland v. Washington, 466 U.S. 668 (1984).  United States v. Willis, 273 F.3d 592,

598 (5th Cir. 2001). To prevail, a movant must show (1) his counsel's performance was deficient

and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 689–94. To

establish deficient performance, a movant must show that his counsel's assistance fell "'below an

objective standard of reasonableness.'"  United States v. Conley, 349 F.3d 837, 841 (5th Cir.

2003) (quoting Strickland, 466 U.S. at 688). In the context of a guilty plea, a movant shows prejudice by establishing "there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). If a movant fails to prove one prong, the reviewing court need no analyze the other.  See Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

The issue here boils down to a dispute of fact. Lozano claims his counsel never discussed an alienage defense; Lozano's counsel claims he did. Such a dispute would normally require an evidentiary hearing. In this case, however, the Court must resolve the dispute without the benefit of a hearing because Lozano's anticipated release date is only days away—on May 3, 2022.  See Find an Inmate, https://www.bop.gov/inmateloc/ (search for Reg. No. 33782-080) (last visited Apr. 11, 2022).

Lozano's counsel had a duty under the Strickland performance prong to independently research the law and investigate the facts surrounding Lozano's case. Nealy v. Cabana, 764 F.2d 1173, 1177–78 (5th Cir. 1985).

The Government charged Lozano with one count of illegal reentry after his deportation, in violation of 8 U.S.C. § 1326. To convict, the Government "was required to prove that (1) [Lozano] was an alien; (2) he had been denied admission, excluded, deported, or removed or had departed the United States while an order of exclusion, deportation, or removal was outstanding; (3) he had not received consent to reapply for admission or demonstrated that such prior consent was not required; and (4) he subsequently entered, attempted to enter, or was at any time found in the United States." United States v. Martinez-Rios, 595 F.3d 581, 583 (5th Cir. 2010).

Lozano does not contest the Government's claim that he (1) was deported, (2) did not obtain approval to reapply for admission, and (3) was found in the United States. He contends he was not an alien. He maintains that—although he was born in Mexico—he acquired U.S. citizenship through his U.S. citizen father. Mot. to Vacate 4, ECF No. 33.

A defendant may contest the alienage element by demonstrating that he is not an alien. United States v. Juarez, 672 F.3d 381, 386, 388 n.4 (5th Cir. 2012) (citing United States v. Meza–Soria, 935 F.2d 166 (9th Cir. 1991); United States v. Ortiz–Lopez, 24 F.3d 53 (9th Cir.1994)). Consequently, a defendant may offer evidence of his acquired or derivative citizenship to rebut the Government's evidence on alienage.

While the Court cannot determine whether Lozano is a citizen, it can assess whether he could have mounted a viable citizenship defense to the illegal reentry charge.

In the United States, "[t]here are 'two sources of citizenship, and two only: birth and naturalization.'" Miller v. Albright, 523 U.S. 420, 423 (1998) (quoting United States v. Wong Kim Ark, 169 U.S. 649, 702 (1898)). "Persons not born in the United States acquire citizenship by birth only as provided by Acts of Congress." Id. at 424.

The Act of Congress at issue in this case—8 U.S.C. § 1409—provides an "unmarried father may not transmit his citizenship to a child born abroad to an alien mother unless he satisfies the residency requirement in § 1401(g) that applies to a citizen parent who is married to an alien." Id. at 429–30. Section 1401(g) requires "the citizen parent must have resided in the United States for a total of at least five years, at least two of which were after attaining the age of 14 years." Id. at 430. The physical-presence requirement "evidences Congress' recognition of 'the importance of residence in this country as the talisman of dedicated attachment.'" Sessions v. Morales-Santana, 137 S. Ct. 1678, 1700 (2017) (quoting Rogers v. Bellei, 401 U.S. 815, 834 (1971); see Weedin v. Chin Bow, 274 U.S. 657, 665–666 (1927) (explaining Congress "attached

more importance to actual residence in the United States as indicating a basis for citizenship than it did to descent. . . . [T]he heritable blood of citizenship was thus associated unmistakably with residence within the country which was thus recognized as essential to full citizenship.") (internal quotation marks omitted)). Additionally, § 1409(a) imposes four more requirements:

> (1) a blood relationship between the person and the father is established by clear and convincing evidence,
>
> (2) the father had the nationality of the United States at the time of the person's birth,
>
> (3) the father (unless deceased) has agreed in writing to provide financial support for the person until the person reaches the age of 18 years, and
>
> (4) while the person is under the age of 18 years—
>
>> (A) the person is legitimated under the law of the person's residence or domicile,
>>
>> (B)  the father acknowledges paternity of the person in writing under oath, or
>>
>> (C) the paternity of the person is established by adjudication of a competent court.

8 U.S.C. § 1409(a).

At Lozano's plea hearing, he claimed—under oath—that he was a Mexican citizen. Plea Tr. 5:14-5:15, ECF No 40. In his PSR—which was based on interviews with Lozano and his wife—he claimed that "he was primarily reared by his mother and stepfather, Pedro Carrillo, a Mexican national, in Ciudad Juarez, Chihuahua, Mexico." Presentence Investigation ¶¶ 37, 38, ECF No. 26. He further claimed "[i]n 1981 (age 18), [he] immigrated to Cactus, Texas, where he remained until 1984 (age 21), and subsequently relocated to Midland, Texas. From 1997 to 2000 (ages 34 to 37), [he] resided in Midland, Texas." Id. at ¶ 39. He did not submit objections to the PSR. Objections, ECF No. 26-3.

The Court may consider the factual recitation of a PSR if it "possesses sufficient indicia of reliability . . . unless the defendant objects and offers 'rebuttal evidence challenging the truthfulness, accuracy, or reliability of the evidence supporting the factual recitation in the PSR.'" United States v. Fields, 932 F.3d 316, 320 (5th Cir. 2019) (quoting United States v. Harris, 702 F.3d 226, 230 (5th Cir. 2012) (per curiam)). The Court finds the PSR in this case possesses sufficient indicia of reliability.

In Lozano's § 2255 motion, he told a slightly different story. He asserted that he was born out of wedlock in Mexico to a Mexican national mother and an American citizen father. Mot. to Vacate 7, ECF No. 33. He further declared that his "father took custody of [him] before age 14 and provided financial support and filed legal documents in El Paso, Texas, recognizing paternity." Id. He also maintained he "lived with his American father who registered [him] in schools and filed most likely the incorrect documentation which resulted in him being given only resident status." Id.

Lozano's counsel asserted in a declaration he explained to Lozano that he might claim he acquired U.S. citizenship through his father—even though he was born in Mexico. Gov't's Resp., Ex. 1 (Decl. of Jose F. Moncayo), ECF No. 41-1. He also claimed he explained the acquired citizenship could provide a possible defense to the illegal reentry charge. Id.  Further, he maintained he discussed completing the immigration paperwork to establish that Lozano was a U.S. citizen. Id. He also reported his assistant was having difficulty in establishing Lozano's citizenship claim—and a frustrated Lozano elected not to pursue the claim. Id.

Lozano's motion tracks the requirements for acquired citizenship under 8 U.S.C. § 1409(a). Yet he offers no evidence to support a conclusion that his father met the physical presence requirements established by Congress in 8 U.S.C. § 1401(g). He also offers no evidence that he met any of the requirements for acquired citizenship under 8 U.S.C. § 1409(a).

Specifically, he fails to present evidence that, before the age of 18, (1) he was legitimated under the law of his residence or domicile, (2) his father acknowledged his paternity in writing under oath, or (3) his paternity was established by a competent court. He offers no school records or other documents to show his place of residence. Instead, he offers his birth certificate—which shows his 21-year-old father claimed he was a Mexican national at the time of Lozano's birth. Lozano Birth Certificate, ECF No. 41-2. And he provides a certificate of birth, prepared on April 15, 1999, which suggests his paternal grandmother was born in New Mexico in 1919. Chavez Certificate of Birth, ECF No. 41-2. Finally, he does not provide any evidence he ever applied to have his acquired citizenship recognized by U.S. immigration authorities.

The burden of proof rests on the movant to show an entitlement to § 2255 relief. Wright, 624 F.2d at 558. A movant must make more than conclusory statements in his motion. Williford v. Estelle, 672 F.2d 552, 553 (5th Cir. 1982). Indeed, a movant's general statements and conclusory allegations—without more—are simply not sufficient to support a court's decision to vacate, set aside, or correct a sentence. Knighton v. Maggio, 740 F.2d 1344, 1349–1350 (5th Cir. 1984).

Upon the available record, Lozano has not shown that he can satisfy all the conditions of 8 U.S.C. § 1401(g) and 1409(a). Furthermore, Lozano has not met his burden of showing that his counsel was ineffective for failing to further investigate and assert acquired citizenship as a defense to the illegal reentry charge. Additionally, he has not met his burden of showing he was prejudiced by his counsel's purported deficient performance.

## CERTIFICATE OF APPEALABILITY

A movant may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of

a constitutional right." Id. § 2253(c)(2). In cases where a district court rejects a movant's constitutional claims on the merits, the movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (applying Slack to a certificate of appealability determination in the context of § 2255 proceedings). To warrant a certificate as to claims that a district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

Reasonable jurists could not debate the Court's reasoning for denying Lozano's claims on substantive or procedural grounds—or find that his issues deserve encouragement to proceed. Miller El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack, 529 U.S. at 484). The Court will not issue a certificate of appealability.

## CONCLUSIONS AND ORDERS

The Court concludes that Lozano has failed to show his counsel's performance was either deficient or prejudiced his cause. It further concludes Lozano has failed to meet his burden of establishing (1) his "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." Seyfert, 67 F.3d at 546. It also concludes that Lozano is not entitled to either § 2255 relief or a certificate of appealability. Accordingly, the Court enters the following orders:

**IT IS ORDERED** that Lozano's pro se "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 33) is **DENIED**, and his civil cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Lozano is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**IT IS SO ORDERED.**

**SIGNED this 14th day of April, 2022.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE